McDANIEL *et al. v.* THE CITY OF COLUMBUS.

The evidence introduced by the plaintiffs, taking it all together, was not sufficient to overcome the presumption arising from municipal legislation to the effect that the sewer, for which the land of the plaintiffs was taken and appropriated, was for public rather than private use, and necessary to accomplish needful sanitary purposes for the welfare of the city.

March 27, 1893. Argued at the last term.

Before Judge MARTIN.    Muscogee superior court.
May term, 1892.

A petition for injunction was brought to restrain the
City of Columbus from constructing a sewer through
the private property of the plaintiffs in that city,.
it being alleged that the city was seeking to take·
plaintiffs' property without first paying them the damage;·
that the damage would be irreparable; that such taking·
would be only for the private accommodation and benefit
of a few individuals, and not for the welfare and benefit.
of the public, etc.    On the hearing an interlocutory in-·
junction was denied, which judgment was affirmed by
the Supreme Court.    87 *Ga.* 440.    The case came on
to be tried before a jury, and upon the submission of
evidence by the plaintiffs, the court ordered a nonsuit,
to which ruling they excepted.

In evidence appeared the following extract from the
minutes of the city council of April 2, 1890: It being
stated that certain property-owners on the block between
14th and 15th streets and 1st and 2d avenues proposed
to furnish pipe to drain their lots, but that some other
property-owners on the same block objected to it being
laid through their property, the matter was, on motion,.
referred to the street committee with the mayor and city
attorney, with power to act.    On January 7, 1891, a.
petition of property-owners residing on said block was
presented to the mayor and council, for the construction
of a sewer for sanitary drainage of the block, the peti-
tioners agreeing to pay in full, *pro rata*, for the con-
struction, as per services rendered the property of each
petitioner.    This was signed by Preer, Frazer, Swift,
Bulloch, Battle, Nisbet and Lott.    This petition was.
recommended by the sanitary inspector and the board
of health; and on motion of an alderman, the sewer was
ordered built.    On March 4, 1891, at the suggestion of·
the mayor, the council elected one Howard as arbitrator

in the matter of condemning a portion of the plaintiffs' lot for the sewer. Another paper was in evidence, signed by Preer *et al.* (the persons above mentioned), with others, agreeing to pay into the city treasury when demanded the amounts set opposite their names (the total being $300), for the purpose of purchasing the right of way for a sewer through the center of the block in question, in compliance with a resolution adopted in council on March 15, 1892. The mayor testified that the city council required the citizens on the block above the plaintiffs to agree to raise $300 before the city undertook to build the sewer; this amount was to be used in buying terra cotta pipe for the sewer; the city had the pipe put in, furnished the hands and had the work done. He further testified thus: Before building the sewer we tried every way possible to get the right of way from the ladies. I as mayor did all in my power to avoid a lawsuit with the ladies. We offered to buy the right of way from them, and they refused to sell it; then as a last resort we had an arbitration of the matter as required by the city charter. The arbitrators fixed the amount at $300. I tendered this money to the attorneys for the ladies, and they refused to accept it. Then I deposited a certified check with the clerk of the superior court for the amount, which is subject to the ladies' call. I consider that this sewer is of importance for the health of Columbus, and is a public necessity. It is a combination sewer with open eyes on each lot, to carry off storm-water and night-soil from the closets. The chairman of the street committee of the council testified similarly as to the character and necessity of the sewer. The plaintiffs (Misses McDaniel) testified: They live on their property at the corner of the block and on the lower side of it, their lot extending back to the center of the block. Bulloch lives above and next to them; then Frazer, Battle, Lott, Swift, Harrison and

Preer live immediately above; they have a perfect open drain from the back of their lots, that runs through and across plaintiffs' lot into the eye of a sewer on 14th street. This drain carries off all the water from their lots, and drains them perfectly. This block and the locality are unusually healthy; there is no local cause for sickness; many old people live in the block and in the vicinity, and all are in good health. Nobody ever tried to buy the right of way through plaintiffs' property, or to negotiate with them for it. The parties above them, and only a few of them, will be benefited by the sewer, and they will only be benefited by using the sewer for their water-closets. The sewer has been built through plaintiffs' back yard, and does no good; it is private in its nature, and benefits only those individuals who worked through the council to get it constructed under the guise of a public necessity, and by their paying for it or agreeing to do so. The plaintiffs also introduced, by consent, the testimony of one Barney, formerly the superintendent of public works of the city, which was before the judge on the hearing for interlocutory injunction, to the effect that the sewer would greatly damage plaintiffs' lot, make their residence unhealthy, and virtually ruin the same.

THORNTON & McMICHAEL, for plaintiffs.

LITTLE, WORRILL & LITTLE, for defendant.

SIMMONS, Justice.

The main question in this case was, whether the construction of the sewer through the plaintiffs' land was a taking for public use or merely for private and individual benefit. Under the charter of the city, the mayor and aldermen were authorized to condemn land for the purpose of constructing sewers whenever the same should be necessary. Upon the recommendation of the sanitary inspector and the municipal board of health, they or-

dered this sewer built, and directed that proceedings be taken for the condemnation of land and the assessment of damages for this purpose, such proceedings being had in the method prescribed by the charter.

The presumption, in the absence of a clear showing to the contrary, is, that in directing and carrying on a work of this character in their corporate capacity, the municipal authorities act for a public purpose, and for the benefit primarily of the community at large or the people generally in the locality of the improvement, and not merely in the interest of any particular individual or individuals who may have petitioned for such improvement and who may be specially benefited thereby. This presumption was not overcome by the evidence of the plaintiffs. There is ample evidence, moreover, to show that the sewer in question was of importance to the general health of the city and was a public necessity, and that it was so regarded by the city authorities.

*Judgment affirmed.*